OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Schulte, Appellant, v. Schulte, Appellee.
[Cite as Schulte v. Schulte (1994),     Ohio St.3d    .]
Domestic relations -- R.C. 3105.171 applies prospectively only
     to those divorce cases filed after its effective date.
R.C. 3105.171 applies prospectively only to those divorce cases
     filed after its effective date, January 1, 1991.
     (Nos. 93-1588 and 93-1745 -- Submitted September 21, 1994
-- Decided November 30, 1994.)
     Appeal from and Certified by the Court of Appeals for Wood
County, No. 91WD075.
     This case involves the divorce of Sonia D. and John
Schulte.  The parties were married on October 17, 1981.  While
married, they had two children, Leslie and Elizabeth.  Sonia
Schulte, appellant herein, filed for divorce on July 21, 1989.
     Sonia and John Schulte both worked as stockbrokers in a
business known as John F. Schulte, Inc., which they started
during 1981.  The business owned numerous pieces of office
furniture, the real property from which the business was run,
and a 1987 Cadillac.  Marital property included the family home
and a partial interest in several rental properties.
     During the divorce, Sonia argued for custody of Elizabeth
based, in part, on allegations that John had sexually abused
Elizabeth, their then four-year-old daughter.  Sonia learned of
the alleged abuse several days after it occurred when Elizabeth
began crying while being read a story.  After Elizabeth started
crying, she complained that "her bottom was very sore."  Sonia
asked "if someone had touched her down there?"  Elizabeth
responded that her father had touched her.  This conversation
occurred on April 14, 1990, with the alleged abuse occurring on
April 10, 1990.  On May 7, 1990, Elizabeth was interviewed by
Belinda Rhoades, Ph.D., a psychologist who specializes in child
development.  Dr. Rhoades' evaluation was that Elizabeth's
actions during the interview were abnormal and were consistent
with someone who had experienced sexual abuse.  Dr. Rhoades
based her evaluation on remarks of Elizabeth's, drawings
Elizabeth made, and how Elizabeth played with anatomically
correct dolls.
     Prior to trial, the trial judge conducted an in camera

interview with Elizabeth for purposes of determining her competency to testify under Evid. R. 601(A). Based upon the interview, the trial judge found Elizabeth incompetent to testify. At trial, the judge refused to allow Sonia or Dr. Rhoades to testify as to what Elizabeth had told them regarding the alleged abuse. The trial court based its decision to exclude that testimony on the grounds that it had found Elizabeth incompetent to testify.

On June 18, 1991, the trial court entered judgment. It awarded Sonia custody of the two children. Because the parties earned incomes that were significantly lower than expected, the trial court "imputed" an annual income of $24,000 a year to both parties. John was ordered to pay child support of $48.34 per week per child. The property was divided so that each party was awarded an equal interest in the rental properties, a total interest in the household goods they separately possessed, and varying interests in other marital property. Finally, the trial court found that John had not sexually abused Elizabeth. The trial court granted John supervised visitation for eight weeks and unsupervised visitationn thereafter, pursuant to the schedule established by the court.

Sonia appealed the trial court's decision. She argued, inter alia, that the trial court erred: (1) in finding Elizabeth incompetent to testify; (2) in excluding the statements made by Elizabeth to Dr. Rhoades and Sonia; (3) in making the child support determination based upon "imputed" income; (4) by not making the specific findings required by R.C. 3105.171 with respect to the division of marital property; and (5) by otherwise abusing its discretion in dividing the marital property.

The court of appeals affirmed the trial court's determination that Elizabeth was incompetent to testify. However, it reversed the trial court's exclusion of the statements made by Elizabeth to her mother and Dr. Rhoades. Specifically, the court of appeals found that the trial court improperly excluded the statements as hearsay.1 It held that the statement to the mother may have qualified under Evid. R. 803(2), as an excited utterance, and the statement to Dr. Rhoades may have qualified under Evid. R. 803(4), as a statement made for the purposes of obtaining treatment and diagnosis. The court of appeals found that the trial court also erred in determining the amount of child support and not complying with the requirements of R.C. 3113.217. Finally, the court of appeals held that R.C. 3105.171 did not apply to this case, because it became effective after the divorce case was filed, and that the trial court did not otherwise abuse its discretion in dividing the marital property. Consequently, the court of appeals affirmed in part, reversed in part and remanded the cause to the trial court.

The court of appeals, finding its judgment to be in conflict with the judgments pronounced upon the same question by the Butler County Court of Appeals in Lairson v. Lairson (June 29, 1992), Nos. CA91-04-071 and CA91-05-087, unreported, 1992 WL 156121, and the Franklin County Court of Appeals in Houck v. Houck (Aug. 27, 1991), No. 91AP-296, unreported, certified the record of the case to this court for review and

final determination.

Joyce E. Barrett, for appellant.
James E. Hitchcock, for appellee.

Wright, J.   The first issue the court must address is whether the trial court used the correct standard to determine that Elizabeth was not competent to testify under Evid. R. 601(A).  Evid. R. 601 provides: "Every person is competent to be a witness except:  (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

This court recently has clarified what a trial court must consider in making a competency determination under Evid. R. 601(A):  "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful."  State v. Frazier (1991), 61 Ohio St.3d 247, 574 N.E.2d 483, syllabus.  The Rules of Evidence, subject to certain exceptions not applicable here, apply equally to both criminal and civil matters.  Evid. R. 101(A).  Consequently, even though Frazier involved a determination of competency in the criminal context, the interpretation we made in Frazier applies with equal weight to the use of the rule in the civil context.

A trial court is not required, while making a competency determination, to make express findings on the considerations outlined in Frazier.  Such a requirement would unduly burden our trial courts with unnecessary formality.  Instead, the trial court is merely required to consider the Frazier factors while making the competency determination.

The Frazier factors play a slightly different role in the hands of a court reviewing a competency determination.  As we noted in Frazier, the determination of competency is within the sound discretion of the trial judge.  61 Ohio St.3d at 251, 574 N.E.2d at 486-487. See, also, State v. Boston (1989), 46 Ohio St.3d 108, 115, 545 N.E.2d 1220, 1228.  The Frazier factors form the backdrop against which a reviewing court evaluates whether the trial judge's determination was an abuse of discretion.

A review of the competency hearing transcript in this case leads us to the conclusion that the trial judge did not abuse his discretion in finding Elizabeth incompetent to testify.  At the time of the hearing, Elizabeth was four years old.  During the hearing, Elizabeth showed a basic awareness of her familial surroundings by stating her name and age, as well as the names of her sister and parents.  However, she was very unclear with respect to the facts surrounding the alleged sexual abuse.  She stated that while helping her bathe, her father "put his thing in my butt."  When asked whether she ever told anyone about the incident, she responded, "They just knew."  When asked whether

she was in pain as a result of the alleged incident, Elizabeth became very distracted.  She answered unresponsively by stating that her father "hit" her.  When asked when the "hitting" occurred, Elizabeth stated, "[s]ome other time."  The trial judge also asked, "Did your mommy tell you to come and tell me this today?"  Elizabeth responded, "Yes."  When asked when her mother told her this, she answered, "[n]ever."  When asked why she now said that her mother did not tell her to come to the hearing, Elizabeth would only state, "'[c]ause."

A review of the hearing transcript as a whole, in light of the Frazier factors, supports the trial judge's finding that Elizabeth was not competent to testify.  Her significant confusion regarding the most basic facts of the alleged incident in the bathtub supports a finding that she was unable to observe and recollect accurate impressions of the facts regarding the alleged abuse.  Additionally, the fact that she was very distracted and uncertain during the hearing supports a finding that she was not capable of accurately communicating what she believed she observed.  Finally, the last portion of the competency hearing cited above certainly calls into question her understanding of truth and falsity and her appreciation of her responsibility to be truthful.  Consequently, we hold that the trial court did not abuse its discretion in finding Elizabeth incompetent to testify.

The second issue we must address is whether the trial court acted properly in dividing the marital property.  Specifically, the issue on appeal is whether the trial court erred in not following the requirements of R.C. 3105.171.

Am. Sub. H.B. No. 514, which split the former R.C. 3105.18 into the new R.C. 3105.18 and 3105.171, became effective on January 1, 1991.  (143 Ohio Laws, Part III, 5516.)  The appellant filed her complaint for divorce on July 21, 1989.  The appellant urges this court to find that R.C. 3105.171 should be applied retroactively to divorce cases filed before the effective date of the statute.  We act today to resolve the conflict between the several courts of appeals that have confronted this question.

In order for a statute to be applied retroactively, a court must find that the General Assembly intended the statute to apply retroactively and that retroactive application of the statute is constitutional under Section 28, Article II of the Ohio Constitution.  Warren Cty. Bd. of Commrs. v. Lebanon (1989), 43 Ohio St.3d 188, 189, 540 N.E.2d 242, 244.  See, also, Van Fossen v. Babcock & Wilcox Co. (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489, 495-496.  In this case, we need go no further than considering the intent of the General Assembly.

R.C. 1.48 creates a presumption that a statute is to be applied prospectively unless the General Assembly expressly makes the statute retroactive.  In this case, there is no language in the statute that supports the conclusion that the General Assembly intended R.C. 3105.171 to apply retroactively.  Consequently, we hold that R.C. 3105.171 applies prospectively only to those divorce cases filed after its effective date, January 1, 1991.  This ends our inquiry.  We need not reach the constitutional question.

The judgment of the court of appeals on the two issues appealed herein is hereby affirmed.

                         Judgment affirmed.

     Moyer, C.J., A.W. Sweeney, Grey, F.E. Sweeney and Pfeifer, JJ., concur.

     Douglas, J., concurs in part and dissents in part.

     Lawrence Grey, J., of the Fourth Appellate District, sitting for Resnick, J.

FOOTNOTE:

     1  Given the trial court's determination that Elizabeth was incompetent to testify, the trustworthiness and, therefore, the admissibility of Elizabeth's statements through the testimony of third parties are questionable at best.  However, John Schulte voluntarily dismissed his cross-appeal. Therefore, we do not address the propriety of the court of appeals' reversal on this issue.

     Douglas, J., concurring in part and dissenting in part.    I concur with the majority opinion in its syllabus holding.  I do not agree that the judgment of the court of appeals should be affirmed.  Rather, I would affirm the judgment of the court of appeals in part and reverse that judgment in part.  I would reinstate the judgment of the trial court in its entirety, except for its determination of child support.