JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Terrie S. Schumann ("appellant") appeals the trial court's judgments of July 30, 2003 and September 18, 2003, favoring defendant-appellee Michael A. Schumann ("appellee"). Having reviewed the arguments of the parties and the pertinent law, we hereby affirm.
 I. {¶ 2} According to the case, appellant filed for divorce against appellee on December 10, 1998. Appellee filed his answer and counterclaim on or about December 14, 1998. The case proceeded to trial on all issues on October 29, 31, December 31, 2001, January 2, 3, 4, 7, 8, February 26, March 7, 13, April 1, 2, 3, 4, 22, 23, 2002, and January 13, February 21, March 17, 18, 19, 21, 24, 25, 27, 2003.
 {¶ 3} The court issued its final judgment entry of divorce on about September 18, 2003, some 23 months after the trial proceedings began and four years and nine months after appellant filed her complaint for divorce. Appellant filed a timely notice of appeal on October 17, 2003. Appellee filed a notice of cross appeal on or about October 21, 2003.
 {¶ 4} According to the facts, appellant and appellee were married on January 2, 1982. Two children were born to appellee and appellant: Lauren and Jennifer. Lauren was born on April 19, 1984 and is now emancipated. Jennifer was born on April 19, 1989 and is now 15 years old.
 {¶ 5} Appellant informed appellee that she was unhappy with the marriage, citing the fact that appellee was significantly older than she was and that she did not want to be his caretaker later in life.[1] In addition, appellant was involved in a relationship with another man in the community, Mark Hanna ("Hanna").[2] Hanna testified at trial that the relationship became sexual and they would meet secretly as often as five times a week during their affair.[3] The sexual affair between appellant and Hanna lasted for eighteen months.[4]
 {¶ 6} Consequently, the parties physically separated in December of 1998 and have lived separate and apart from each other since then. The trial court determined that the marriage lasted for 16 years, from January 2, 1982 until appellant filed her complaint for divorce on December 8, 1998.
 {¶ 7} The parties owned a marital residence in Pepper Pike worth more than $1,500,000 with a balance of $280,000 remaining on the mortgage.[5] The parties maintained an extravagant lifestyle during their marriage. Appellant and appellee owned valuable personal possessions, including artwork, antiques, furnishings, jewelry and other personal items. In addition to tangible items of property, the parties had bank accounts, brokerage accounts, and retirement benefits.[6] The children attended private schools during the marriage and both appellant and appellee had memberships at exclusive country clubs.
 {¶ 8} Appellee Michael Schumann worked at I. Schumann Co. for many years. I. Schumann Co. was formed in 1917 by his grandfather and he was a vice-president of this company throughout most of the marriage, until 1995 when he became president and CEO. Appellee has been employed in that capacity since that date.
 {¶ 9} On March 11, 1999, an agreed judgment entry was executed by the parties providing for the temporary support of appellant and the minor children. Appellee was ordered to pay $3,000 per month and to make credit card payments up to the amount of $15,000 per month available for appellant's use. In addition, appellee agreed to pay all of the expenses of the parties at the marital residence, and other such expenses, including, but not limited to, significant tuition for the parties' minor children at private school, activities, camp, transportation, private lessons at the racquet club, and the Jewish Community Center.[7]
 {¶ 10} The parties reserved the right for further hearings on the issue of temporary support. On July 1, 1999, appellant filed an affidavit for temporary support claiming new monthly expenses in an amount exceeding $35,000. Later, the trial magistrate ordered child support in the amount of $6,900 per month for the parties' one child still residing with appellant. In addition, the trial court ordered appellee to pay $14,500 per month for spousal support, resulting in a total temporary support payment of $21,400 per month.[8]
 II. {¶ 11} Appellant's first assignment of error states the following: "The trial court erred and abused its discretion in finding that I. Schumann Company and related entities were appellee's separate property based upon the `agreement' of December 29, 1981." Appellant's second assignment of error states the following: "The trial court erred and abused its discretion in its division of property."
 {¶ 12} Due to the substantial interrelation between appellant's first and second assignments of error, we shall address them together. Appellant argues that the trial court erred in finding that appellee's company was separate property; however, we do not find merit in appellant's argument.
 {¶ 13} An appellate court reviews the overall appropriateness of a trial court's property division pursuant to divorce proceedings under an abuse of discretion standard. Kelly v.Kelly, Hamilton App. No. C-950597, 1996-Ohio-2390. An abuse of discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. A trial court has broad discretion in making a division of marital property in domestic relations cases. Berish v. Berish (1982),69 Ohio St.2d 318.
 {¶ 14} In the case sub judice, the evidence adequately demonstrates that the agreement reached by the parties on December 29, 1981 was valid and binding on the parties. The trial court weighed the evidence and found that both parties had adequate time to review and understand the agreement executed on December 29, 1981. Indeed, the trial court addressed these issues in its September 18, 2003 judgment entry of divorce when it stated the following:
{¶ 15} "The contract, as executed by the parties on December29, 1981, was understood by both parties; and the contract wasdesigned to protect both parties in case of divorce or the deathof either party. * * *
 {¶ 16} "Each party had adequate time to review and read thecontract. Each party had the opportunity to seek and obtain legaladvice and counsel concerning the terms, conditions,consequences, and legal requirements of the contract. Neitherparty was subject to surprise, neglect, fraud, duress, undueinfluence, coercion, or other act or influence which causedeither party to be in a subordinate negotiating position orunable to understand the contract.
 {¶ 17} "The Court finds specifically that the parties enteredinto a valid agreement that is designed specifically to protectthe family businesses of the parties' respective families. TheCourt finds that this agreement specifically controls thedisposition of the business entities that the parties owned,respectively, prior to the period of time of their marriage andthat are owned currently.
 {¶ 18} "The Court finds that the ownership interest of I.Schumann Co., and related entities and assets shall be and remainthe property of the Defendant, Michael A. Schumann. The Courtfinds specifically that the Defendant, Michael A. Schumann'sownership interest in I. Schumann Co., and related entities, ishis separate property."[9]
 {¶ 19} The trial court made its decision only after a long and arduous process. The evidence presented demonstrates that the trial court based its decision on competent evidence and did not make an unreasonable, arbitrary or unconscionable decision in finding that I. Schumann Co. and its related entities are the separate property of appellee.
 {¶ 20} The trial court made its decision regarding the division of property only after evaluating thousands of pages of documentation, listening to sworn testimony, conducting many pretrials, and the completion of countless other activities. In addition, the court conducted a lengthy and extensive trial. The lower court conducted a trial consisting of no less than 26 separate dates over the course of well over a year. The trial began on October 29, 2001 and did not conclude until March 27, 2003.
 {¶ 21} The evidence at trial clearly demonstrated that no marital funds went into the company and any increase in the value of I. Schumann Co.'s stock was not the result of the efforts of appellee.[10] Appellee is only one of a number of employees that work for the company and appellant failed to offer sufficient evidence that any increase in value was the result of marital labor. We find that the trial court did not abuse its discretion regarding appellant's first two arguments.
 {¶ 22} Appellant's first and second assignments of error are overruled.
 III. {¶ 23} Appellant's third assignment of error states the following: "The trial court erred and abused its discretion in making a finding which was inconsistent with the order regarding the duration of spousal support and in ordering direct payment of the spousal support."
 {¶ 24} Appellant argues that the trial court erred when it allowed appellee to make his spousal support payments directly to her and not through C.S.E.A.; however, we disagree. The trial court complied with R.C. 3105.18(C) when it considered certain enumerated factors in arriving at a reasonable and appropriate spousal support award. The trial court outlined its findings in its judgment entry in volume 4200, pages 187-192. It made the following finding, numbered 43, at pages 192 and 193:
{¶ 25} "Pursuant to the factors that are set forth in OhioRevised Code Sections 3105.18(C)(1)(a) through (n); and, basedupon the income and expenses of the Defendant, Michael A.Schumann-and based upon the anticipated income and expense of thePlaintiff, Terrie S. Schumann-the Court finds that the Plaintiff,Terrie S. Schumann, has a need for spousal support in the amountof Twelve Thousand Dollars ($12,000.00) per month, for a periodof seventy-two (72) consecutive months, commencing April 1,2003-or until the Plaintiff or the Defendant dies, or until thePlaintiff remarries or cohabitsbut not subject to further Orderof the Court."
 {¶ 26} Appellant argues that despite these findings, the trial court made an inconsistent order later on page 0209 of the same document, which stated the following:
{¶ 27} "IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that,effective March 1, 2003, the Defendant, Michael A. Schumann,shall pay directly to the Plaintiff, Terrie S. Schumann, the sumof Twelve Thousand Dollars ($12,000) as and for spousal supportin the within matter. The spousal support obligation shall be fora period of time of sixty months."
 {¶ 28} The second statement provides for 60 months instead of 72 months of spousal support payments and contains a 30-day difference in the starting date, March 1, 2003 instead of April 1, 2003. The second statement also provides for the support to be paid directly to appellant.
 {¶ 29} We find the clerical errors in this specific situation to be de minimis and therefore not enough to rise to the level of an abuse of discretion on the part of the trial court. Based on the totality of the circumstances and the substantial evidence presented, we do not find an abuse of discretion on the part of the trial court in this particular circumstance.
 {¶ 30} Appellant's third assignment of error is overruled.
 IV. {¶ 31} Appellant's fourth assignment of error states the following: "The trial court erred and abused its discretion in granting appellee's motion to strike the testimony of appellant's valuation expert."
 {¶ 32} We find that the trial court properly excluded the testimony of Radd Riebe ("Riebe"). Riebe was not hired by or employed by appellant. Robert Greenwald was appellant's expert valuation witness; however, Greenwald's report was never submitted at the trial of this matter.[11] Furthermore, Riebe, who was called by appellant to testify as to the value of appellee's interest in the company, only had prior experience in an advisory role to the Employee Stock Ownership Plan ("ESOP") trustee.
 {¶ 33} Riebe testified that the ESOP valuations do not provide a fair market value and/or relate to the actual shares of I. Schumann Co.[12] Therefore, even if Riebe's testimony was not stricken by the trial court, it would have been irrelevant to establishing a value for appellee's interest in I. Schumann Co.
 {¶ 34} One of the problems with Riebe's analysis was that the ESOP valuations set forth an increase in I. Schumann Co.'s value from year to year, when, in reality, I. Schumann Co.'s gross sales were decreasing each year.[13]
 {¶ 35} Riebe's ESOP valuations set forth the stock value in I. Schumann Co. for the year 2000 at $39.28 per share.[14] In 1999, the value of stock was set forth as $38.67 per share.[15] Moreover, the evidence and testimony set forth that the most recent ESOP valuation in December of 2001 demonstrated a value of $20.47 per share,[16] demonstrating that the value of I. Schumann Co. had decreased significantly during the term of these proceedings.
 {¶ 36} In addition, appellant did not comply with Evid.R. 703 or 802, as appellant failed to lay the proper foundation and introduce any of the underlying evidence upon which Riebe's work product was based.[17] Therefore, based on the evidence above, we find that the trial court acted properly in excluding the testimony of Riebe.
 {¶ 37} Appellant's fourth assignment of error is overruled.
 V. {¶ 38} We now address appellant's last two assignments of error. Appellant's fifth assignment of error states the following: "The trial court erred and abused its discretion in modifying the temporary support order upon appellee's motion; and in not finding appellee in contempt of court and assessing arrearages in temporary support."
 {¶ 39} Appellant's sixth assignment of error states the following: "The trial court erred and abused its discretion in its debt allocation."
 {¶ 40} Appellant argues that the trial court erred in modifying the temporary support order and in not finding appellee in contempt and assessing arrearages. However, we do not find merit in appellant's argument.
 {¶ 41} In domestic relations matters, a trial court is vested with broad discretion in the award of spousal support. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217. We will not disturb the trial court's decision regarding the modification of spousal support on appeal unless the trial court abused that discretion. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Id.
 {¶ 42} An appellate court reviews the modification of spousal support under an abuse of discretion standard. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. An abuse of discretion exists when the decision of a court is so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Absent such a showing, the trial court's judgment will be affirmed. When applying the abuse of discretion standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court. Marx v. Marx, Cuyahoga App. No. 83681, 2004-Ohio-3740.
 {¶ 43} On July 1, 1999, the trial court issued an order for support pendente lite pursuant to Civ.R. 75(N), effective June 1, 1999.[18] The evidence demonstrates that appellee paid support of approximately $156,717 for June 1999 through December 1999.[19] The trial court properly found that appellee's obligation during that time period was $149,800 ($21,400 × seven months), thereby resulting in an overpayment of $6,917 by appellee.
 {¶ 44} Later, on December 1, 2000, the trial court modified the temporary support obligations of appellee, reducing his child support obligation from $6,900 per month to $4,000 per month for one child. In addition, the trial court reduced appellee's spousal support from $14,500 per month to $12,000 per month.[20]
 {¶ 45} Appellant testified that she filed a tax return for the year 2000 in which she reported receiving $174,000 in spousal support, the amount ordered by the magistrate.[21]
Appellant further testified that between 1999 and 2000 she received approximately $257,000 in spousal support.[22]
Appellant testified that before the temporary support order in June 1999, appellee gave her an expense account of $15,000 a month, paid for all of her credit cards and expenses, and also gave her additional spending money.[23]
 {¶ 46} The trial court properly found that appellant overpaid temporary support in 2000 in the amount of $8,054.[24] In 2001, the trial court properly found that appellee paid spousal support and support for their minor child in the amount of $257,391.[25] The trial court properly found that appellee again overpaid during this time period in the amount of $65,391.
 {¶ 47} In 2002, appellee paid support in the amount of $133,521.[26] However, this time the trial court found that appellee's payments resulted in an arrearage of $58,479. In 2003, (for January and February) the trial court properly found that appellee paid $21,103, resulting in an arrearage for 2003.
 {¶ 48} Evidence presented at trial demonstrates that appellee was forced to start paying the mortgage and tuition payments directly when he began receiving late notifications of delinquency.[27] The trial court properly credited appellee for direct payments on his support obligations.
 {¶ 49} Appellee filed requests during the case for a review of the court's June 1, 1999 temporary order. This order was entered into by the magistrate without the benefit of a full hearing pursuant to Civ.R. 75(N) and was entered into solely by the affidavits of the parties. Appellee submitted a motion for full evidentiary hearing pursuant to Civ.R. 75(N) and a separate motion to modify the temporary order for support. These motions came to a hearing before trial; however, they were never ruled upon by the court. Consequently, the temporary order remained unmodified until the judgment entry of divorce. The trial court had the jurisdiction to modify the temporary support order at the final hearing, pursuant to a properly filed motion by appellee.
 {¶ 50} A temporary order is merely an order to provide for the needs of the parties during the pendency of the divorce action. The trial court has discretion to order an amount different from the temporary order after final hearing, even without evidence of a change in circumstances. The trial court need not justify a difference between a temporary and a permanent child support award. Martin v. Martin, Cuyahoga App. Nos. 79219, 79388, 2001-Ohio-5736.
 {¶ 51} We find that the trial court did not abuse its discretion and acted properly in modifying the temporary support order. Furthermore, we find the court's actions regarding the assessment of arrearages and contempt of court to be proper.
 {¶ 52} Appellant argues that the trial court erred and abused its discretion in its debt allocation; however, we do not find merit in this argument. The trial court properly allocated the debt between the parties, as the debt of $120,000 was used to pay marital expenses and debts during the parties' extensive litigation.[28] Testimony and exhibits submitted by appellee during the trial demonstrate adequate evidence to support the trial court's findings regarding the division of the debt between the parties.
 {¶ 53} Appellant's fifth and sixth assignments of error are overruled.
 VI. {¶ 54} Appellee argues in his cross appeal that the trial court erred in its award of spousal support and in its division of property. More specifically, appellee/cross-appellant's first assignment of error states the following: "The trial court abused its discretion in its determination of the amount and duration of spousal support awarded to the appellant, Terrie S. Schumann."
 {¶ 55} Appellee/cross-appellant's second assignment of error states the following: "The trial court erred in ordering the appellee to contribute to the attorney fees of the appellant, Terrie S. Schumann as additional spousal support."
 {¶ 56} Appellee/cross-appellant's third assignment of error states the following: "The trial court erred in failing to attach child support guidelines and abused its discretion in awarding more child support than set forth by the child support guidelines."
Appellee/cross-appellant's fourth assignment of error states the following: "The trial court abused its discretion in allocating the debt of $624,000.00 as the sole responsibility of Michael A. Schumann."
 {¶ 57} We do not find merit in appellee/cross-appellant's first assignment of error. Aside from the error regarding the direct payment of spousal support, previously addressed in appellant's third assignment or error, we find no abuse of discretion in the spousal support awarded. Based on the previously mentioned substantial evidence presented in this case, we find that the trial court made the proper findings in arriving at its spousal support award.
 {¶ 58} A reviewing court will not conduct an item-by-item review of a judge's determinations or interfere with his broad discretion to equitably divide marital property upon a divorce unless, viewing the totality of the circumstances, a judge abused that discretion. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. But, when applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the judge and must be guided by a presumption that the findings are correct. In order for there to be an abuse of discretion, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather passion or bias. Kaiser v. Kaiser,
Cuyahoga App. No. 81346, 2003-Ohio-1343.
 {¶ 59} Although a judge is granted freedom in making spousal support orders, he is constrained in the evaluation of the surrounding facts and circumstances by R.C. 3105.18, which mandates certain relevant factors to be considered when making such awards. R.C. 3105.18(C)(1) sets out the factors that must be considered when contemplating an order of spousal support.Oleksy v. Oleksy, Cuyahoga App. No. 80766, 2002-Ohio-5085.
 {¶ 60} In the case sub judice, the trial court complied with R.C. 3105.18(C) in arriving at its spousal support award, and as previously discussed, substantial evidence supporting the trial court's decision was presented.[29] Based on the evidence, we do not find that the trial court abused its discretion in its determination of the amount and duration of spousal support awarded to the appellant.
 {¶ 61} Appellee further argues in his cross appeal that the trial court erred in ordering him to contribute to the attorney fees of appellant. We do not find merit in appellee's second argument. The amount of attorney fees awarded is discretionary with the court. Ingalls v. Ingalls (1993), 88 Ohio App.3d 570. A trial court does not per se abuse its discretion by awarding fees in an amount less than what had been requested. Nori v.Nori (1989), 58 Ohio App.3d 69; Kelley v. Kelley (Sept. 15, 1994), Cuyahoga App. No. 66137.
 {¶ 62} In the case at bar, appellant sought $100,000 in reimbursement for her attorney and expert fees; however, she only received $40,000.[30] Based on the evidence presented, we find that the trial court did not abuse its discretion in awarding appellant 40 percent of her requested attorney fees.
 {¶ 63} Regarding appellee's third assignment of error, it must be remembered that this case was originally filed on December 20, 1998, and R.C. 3113.215 was the statute that controlled child support at that time. In Kaiser v. Kaiser,
Cuyahoga App. No. 81346, 2003-Ohio-1343, this court held that the revisions to the child support statute, which became effective on March 22, 2001 as codified in R.C. 3119.022, et. seq., cannot be applied retroactively to cases filed prior to the effective date of the statute.[31]
 {¶ 64} The failure to attach a child support guidelines worksheet in this particular situation could easily be remedied pursuant to a Civ.R. 60(A) proceeding. Moreover, appellant attached a child support guidelines worksheet to her final argument and proposed judgment entry indicating that appellee should pay $4,867.12 per month for child support. The worksheet attached to appellant's final argument is in accordance with the evidence adduced at trial. Based on the evidence presented, we do not find the lower court's actions to be improper.
 {¶ 65} Appellee refers to an agreed judgment entry, dated March 27, 2003, relating to child support in his brief. However, this entry is an interim entry superseded by the final judgment entry of divorce, journalized on September 18, 2003. In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree. Colom v. Colom
(1979), 58 Ohio St.2d 245.
 {¶ 66} We find that the evidence presented demonstrates that the trial court's actions regarding the allocation of debt were proper. There was clearly no abuse on the part of the trial court with respect to this debt.
 {¶ 67} Appellee/cross-appellant's first, second, third and fourth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Gallagher, J., Concur.
[1] Tr. 3628.
[2] Tr. 981, 1085, 1099.
[3] Tr. 3011-3014.
[4] Tr. 3021, 3027.
[5] Tr. 3696.
[6] Tr. 3100-3703.
[7] See OSJ Vol. 3355, pgs. 0068-0071.
[8] See OSJ Vol. 3415, pgs. 0072-0085.
[9] See OSJ Vol. 4200, pgs. 0179-0180.
[10] Tr. 3653-3655, 3894-3895.
[11] See defendant's exhibits HH-II (Robert Greenwald's retainer agreement), and defendant's exhibit 8(S), (Robert Greenwald's bill for services rendered, $11,372.48).
[12] Tr. 106.
[13] Tr. 1530-1531.
[14] See plaintiff's exhibit 1.
[15] See plaintiff's exhibit 2.
[16] See defendant's exhibit 10(G).
[17] Rule 703. "BASES OF OPINION TESTIMONY BY EXPERTS. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."
Rule 802. "HEARSAY RULE. Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."
[18] Civ.R. 75(N) "Allowance of spousal support, child support, and custody pendente lite. (1) When requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the court or magistrate, without oral hearing and for good cause shown, may grant spousal support pendente lite to either of the parties for the party's sustenance and expenses during the suit and may make a temporary order regarding the support, maintenance, and allocation of parental rights and responsibilities for the care of children of the marriage, whether natural or adopted, during the pendency of the action for divorce, annulment, or legal separation." "(2) Counter affidavits may be filed by the other party within fourteen days from the service of the complaint, answer, counterclaim, or motion, all affidavits to be used by the court or magistrate in making a temporary spousal support order, child support order, and order allocating parental rights and responsibilities for the care of children. Upon request, in writing, after any temporary spousal support, child support, or order allocating parental rights and responsibilities for the care of children is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary order. A request for oral hearing shall not suspend or delay the commencement of spousal support or other support payments previously ordered or change the allocation of parental rights and responsibilities until the order is modified by journal entry after the oral hearing."
[19] See judgment entry of divorce, p. 30 OSJ Vol. 4200, p. 196. Defendant's exhibits QQQ through SSS, 7(Z), 7-(Z)(1), 7-(Z)(2), 8(W), 9(G) and 9(S) and 10(P).
[20] The effective date of modification as set forth by the trial court is December 1, 2000. See judgment entry of divorce, p. 30 OSJ Vol. 4200, p. 196.
[21] $174,000 divided by twelve months equates to $14,500 per month, the amount of the monthly spousal support ordered by the magistrate. Tr. 2844.
[22] Tr. 2856-57.
[23] Tr. 2860-61.
[24] Appellee also paid for the parties' then-minor child, Lauren, who lived with appellee, and these expenditures were not included in the above calculation. For example, expenses for Lauren's school alone included $19,000 per year in tuition and $10,000 a year for extracurricular activities. Appellant did not contribute toward any of these expenses. Tr. 2862-2865.
[25] See judgment entry of divorce, p. 31 OSJ Vol. 4200, p. 0197. (Defendant's exhibits QQQ through SSS, 7(Z), 7-(Z)(1), 7-(Z)(2), 8(W), 9(G) and 9(S) and 10(P)).
[26] See judgment entry of divorce, p. 32. OSJ Vol. 4200, p. 0198.
[27] Tr. 3825, 4226, 4229. See defendant's exhibit 9(R).
[28] See judgment entry of divorce, p. 20 OSJ Vol. 4200, p. 0186, which reads, "The Court finds that the debt that is due and owing to Provident Bank, in the amount of approximately One Hundred Twenty Thousand Dollars ($120,000.00) is a marital debt, and each party shall pay one half(½) of said debt."
[29] R.C. 3105.18(C)(1) "In determining whether spousal support is appropriate and reasonable, * * * the court shall consider all of the following factors:
"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
"(l) The tax consequences, for each party, of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable."
[30] See p. 49 of plaintiff's proposed judgment entry of divorce with findings of fact and conclusions of law.
[31] See Kaiser, which states the following: "We hold that the trial court correctly applied R.C. 3113.215, which was in effect at the time Ms. Kaiser filed her complaint for divorce. Kaiser essentially urges this court to apply R.C. 3119.022
retroactively to this case, which was filed before the effective date of R.C. 3119.022. A statute, however, is to be applied prospectively unless the General Assembly intended for it to apply retroactively. There is no language in R.C. 3119.022 that suggests that the General Assembly intended it to be applied retroactively. See Schulte v. Schulte (1994), 71 Ohio St.3d 41,44-45, 1994 Ohio 459, 641 N.E.2d 719."