[Cite as *State v. Counts*, 2022-Ohio-3666.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                               :

      Plaintiff- Appellee,            :

                                   No. 111042

          v.                           :

KAYLYNN COUNTS,                              :

      Defendant-Appellee.            :

[Appeal by L.T. and F.K.,                     :

      Named Victims]                 :

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 13, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634510-A

## *Appearances:*

Synenberg & Associates, LLC, and Roger Synenberg, *for appellee* Kaylynn Counts.

Ohio Crime Victim Justice Center and Elizabeth A. Well*, for appellants.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} In this case, the trial court ordered appellants F.K. and L.T., the named victims in an indictment ("victims"), to submit to an inspection of their home by appellee Kaylynn Counts, the defendant in the case. The trial court's order is reversed because the wrong legal standards were applied in conducting a balancing test of the victims' rights and Counts's rights under both the federal and Ohio Constitutions. Judgment is reversed, and the cause remanded.

I. PROCEDURAL HISTORY AND RELEVANT FACTS

A. Procedural History

1. The criminal case against Counts and the discovery process

{¶ 2} Counts was indicted in the Cuyahoga County Court of Common Pleas for several counts of attempted murder and felonious assault, with the named victims F.K. and L.T. (hereinafter referred to collectively as the "victims"). The incident giving rise to the indictment occurred in the victims' home in November 2018. The parties have related in briefing to the trial court that Counts was living in the home for several months and was asked to leave. While leaving, there was a dispute about Counts's possessions. The victims reported to police that Counts was out of the house and then forced her way back in where a fight ensued, resulting in F.K. being stabbed approximately 30 times and L.T. suffering a stab wound requiring stitches. Counts disputes the victims' version of the events.

{¶ 3} During the criminal case, the state of Ohio provided discovery. Included within the discovery was body-camera footage of police officers who

arrived at the end of the incident. The footage includes scenes of the interior of the home and the injuries sustained by F.K. The facts and procedural history relevant to this appeal have been set forth by this court in *State ex rel. Thomas v. McGinty*, 2019-Ohio-5129, 137 N.E.3d 1278 (8th Dist.) ("*McGinty I*"), and more recently by the Ohio Supreme Court in *State ex rel. Thomas v. McGinty*, 164 Ohio St.3d 167, 2020-Ohio-5452, 172 N.E.3d 824 ("*McGinty II*").

B. The request for inspection of L.T.'s home and the initial trial court ruling

{¶ 4} On April 1, 2019, Counts filed a "Motion for Criminal Rule 16 Entry Upon Land for Inspection and Photograph," requesting to inspect the home where the victims reside. Counsel wanted access to the home to aid in "forensically recreating the incident" for the defense's case. The state opposed the motion, arguing that the trial court lacked authority to order access by a criminal defendant to a victim's home under Crim.R. 16. The trial court's journal entry allowing Counts and the defense team to inspect the home stated:

> The parties communicate to provide 3 available days with a specific time to allow State to confer with homeowner. The state will indicate to defense counsel the date for the discovery. The court orders that bailiff shall be the court representative and be present at all times while the defendant, defense counsel and their experts are within the residence. At all times, the defendant, defense counsel and their expert shall be within the view of bailiff. The court orders that a sheriff's deputy shall assist bailiff in this procedure. The victim shall not be in the residence once the discovery process commences. The court further orders that Cleveland Police Department and County

Prosecutor [personnel] may be present, but may not be within the residence when the discovery is ongoing.[1]

C. Victims sought writ of prohibition to foreclose the discovery order

{¶ 5} In *McGinty I*, the victims filed an original action in this court seeking a writ to restrain the trial court from enforcing his discovery order. They argued that Article I, Section 10a of the Ohio Constitution, a.k.a. Marsy's Law, provided them the right to refuse to provide the requested discovery and that the U.S. Constitution Fourth Amendment's prohibition of unreasonable searches and seizures further prevented the trial court from permitting Counts and the defense team to have access to their residence.

{¶ 6} In considering the victims' petition, this court held that a trial court "has broad discretion, and thus the jurisdiction, over discovery matters, such that the writ of prohibition will not lie." *McGinty I* at ¶ 26. Relying on cases from other jurisdictions to form the decision to dismiss the petition, this court determined that a third party's privacy rights "must be weighed against a criminal defendant's rights to due process, to confront witness[es], to have compulsory process to obtain evidence, and to effective assistance of counsel." *Id*. at ¶ 42.

{¶ 7} The dismissal of the writ was appealed to the Ohio Supreme Court, which affirmed our dismissal of the writ in *McGinty II*. The Ohio Supreme Court

---

[1] The state unsuccessfully sought leave to appeal this order. *See State v. Counts*, 157 Ohio St.3d 1408, 2019-Ohio-3731, 131 N.E.3d 73.

found that the trial court acted within its jurisdiction to issue discovery. *Id.* at ¶ 19, 26. Of a procedural note in this case, the Ohio Supreme Court found that "Section 10a(B)'s grant of a right to 'petition the court of appeals' does not, however, mean that a writ of prohibition is the proper remedy." *Id.* at ¶ 30. Rather, the court found that a discovery order that implicated a victim's right under Marsy's Law could immediately appeal the order under R.C. 2505.02(B)(4). *Id.* at ¶ 42.

D. The trial court's second order granting Counts's motion to dismiss

{¶ 8}    Following the Ohio Supreme Court's decision in *McGinty II*, the trial court held a further hearing on Counts's motion for the inspection of the victims' home.[2] F.K., L.T., their attorney, the state, Counts, and her counsel were present at the hearing. The trial court granted the motion. In its opinion granting the motion, the trial court reasoned:

> A comparison review of Marsy's Law and the Defendant's rights under the 4th, 5th, 6th and 14th amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution compels one to rule in favor of the Defendant's rights to a fair trial and effective assistance of counsel. To deny the Defendant the right to obtain evidence in order to assist in her defense at trial would facially and substantially deny her constitutional rights. One accused of a crime may face jail, prison, or even death. The victim in this case is being ordered to allow the Defendant the right to inspect the victim's premises with counsel, under supervision, for a short period of time.
>
> The possible loss of the Defendant's liberty preempts the brief invasion of the victim's privacy. Inherent in the Defendant's right to counsel, is the right to have the accused's case properly investigated,

---

[2] In *McGinty II,* the Ohio Supreme Court questioned whether the initial discovery order directed the victims to submit to discovery. *Id.* at ¶ 22.

and when necessary, to have property inspected without the State or its agents peering over the shoulders of counsel.

(Trial Court's Judgment Entry, Nov. 19, 2021.)

{¶ 9} In addition to this balancing test, the trial court found it had the authority to order the inspection of the victims' property under its power to regulate the discovery process. The trial court also set specific conditions on the inspection of the home, to include restrictions on the portions of the home to be inspected and a time limit for Counts and her counsel's inspection.

{¶ 10} It is from this order that the victims appeal.

II. LAW AND ARGUMENT

A. Assignment of error and issues raised

{¶ 11} This is a case of first impression for this court. We are asked under what circumstances may a trial court order victims to allow a criminal defendant the ability to inspect their home when those victims object pursuant to Marsy's Law. Marsy's Law provides in relevant part:

(A) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused:

* * *

(6) except as authorized by section 10 of Article I of this constitution, to refuse an interview, deposition, or other discovery request made by the accused or any person acting on behalf of the accused;

* * *

(B) The victim, the attorney for the government upon request of the victim, or the victim's other lawful representative, in any proceeding involving the criminal offense or delinquent act against the victim or in which the victim's rights are implicated, may assert the rights enumerated in this section and any other right afforded to the victim by law. If the relief sought is denied, the victim or the victim's lawful representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition.

\* \* \*

(E) All provisions of this section shall be self-executing and severable, and shall supersede all conflicting state laws.

{¶ 12} The victims allege one assignment of error, which reads:

The trial court erred in its November 19, 2021 journal entry by ordering [F.K. and L.T.] to vacate their home and allow Defendant and the defense team to search, measure, and photograph the home in violation of Ohio Constitution, Article I, Section 10a(A)(1), (6) and Amendment IV to the United States Constitution and contrary to the criminal rules.

{¶ 13} Within the assignment of error, the victims argue that the trial court erred where it improperly elevated a criminal's statutory rights to discovery in a criminal case over the victims' federal and state constitutional rights. Further, the victims argue that the order in this case is contrary to the Ohio Rules of Criminal Procedure. For her part, Counts argues that she has a constitutional right to fully defend herself and, as such, the trial court had the authority to issue, and properly issued, the order allowing her and counsel to inspect the victims' home.

B. The trial court had the authority to issue a discovery order to a nonparty in this case

{¶ 14} The victims, who are not parties to the criminal case, have been ordered to allow the inspection of their home. They argue that the trial court had no

authority under Crim.R. 16 to order them to submit to discovery because that rule is limited in scope to the parties to a criminal case, the state, and the criminal defendant, and that Crim.R. 16(J) prohibits material "otherwise prohibited from disclosure." Counts argues that both this court and the Ohio Supreme Court have recognized the trial court's authority to issue discovery orders to nonparties in a criminal case.

{¶ 15} Prior to the addition of Marsy's Law to the Ohio Constitution, the Ohio Supreme Court recognized that trial courts have the authority to issue a discovery order to a nonparty. *See State ex rel. Ohio Bell Tel. Co. v. Williams*, 63 Ohio St.2d 51, 407 N.E.2d 2 (1980); *McGinty II* at ¶ 25. The decision to issue such discovery orders are within the trial court's discretion. *McGinty II* at ¶ 26-28. Accordingly, we do not find the victims' argument that Crim.R. 16 prohibits the order in this case persuasive.

C. Applicable law and standard of review of discovery orders

1. Discovery orders are generally reviewed for an abuse of discretion

{¶ 16} A trial court's discovery orders are reviewed for an abuse of discretion. *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 110 Ohio St.3d 343, 2006-Ohio-4574, 853 N.E.2d 657, ¶ 9. In *McGinty II,* the Ohio Supreme Court found that Marsy's Law grants victims the right to refuse discovery, but noted that this right to refuse is not absolute, stating, "Under [Marsy's Law], a crime victim has a constitutional privilege to refuse a discovery request made by the accused, albeit a qualified privilege subject to a trial court's determination

that Article I, Section 10 of the Ohio Constitution overrides the victim's privilege and authorizes the discovery." *McGinty II* at ¶ 45. Because the Ohio Supreme Court likened the right to refuse discovery to a qualified privilege, the victims ask us to review the order in this case de novo, the standard of review applied to an order requiring a party to disclose privileged information. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13 ("But whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo.").

{¶ 17} In stating that the right to refuse discovery is qualified or subject to exception, the Ohio Supreme Court was not determining that the discovery sought was privileged information, especially where the Ohio Supreme Court explicitly stated that the discovery order "does not implicate the discovery of records that are protected by a statutory or common-law privilege." *McGinty II* at *id*. In this case, we recognize that once the accused is allowed to enter the victims' premises, the "proverbial bell cannot be unrung." *Id*. at ¶ 48. A discovery order to disclose privileged material is reviewed de novo, but without clear precedent from the Ohio Supreme Court otherwise, the discovery order in this case is reviewed for an abuse of discretion. "[T]he allowance or overruling of various discovery motions in a criminal case rests within the sound discretion of the trial court, and only in cases of clear abuse will that discretion be disturbed upon review." *State v. Laskey*, 21 Ohio St.2d 187, 192, 434, 257 N.E.2d 65 (1970), *vacated in part*, 408 U.S. 936, 92 S.Ct. 2861, 33 L.Ed.2d 753 (1972).

{¶ 18} An abuse of discretion is more than mere error in judgment, it implies that the court's attitude is "unreasonable, arbitrary, or unconscionable." *State ex rel. Grady v. State Emp. Rels. Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997). More recently, the Ohio Supreme Court has refined it's understanding of what constitutes an abuse of discretion, finding that an error in the application of law by a trial court exercising discretion is an abuse of discretion. *Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 38 ("This should be axiomatic: a court does not have discretion to misapply the law."). Our court has found that "[a]n abuse of discretion may be found where a trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Heltzel v. Verikakis*, 8th Dist. Cuyahoga No. 110866, 2022-Ohio-1764, ¶ 16, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

2.      Victims' right to refuse a discovery request and right to be secure in their home

{¶ 19} Marsy's Law grants a victim the right to refuse a discovery request made by the accused, except for an accused's rights specifically authorized by the Ohio Constitution. Ohio Constitution, Article I, Section 10a. Pursuant to Ohio Constitution, Article I, Section 10, an accused may depose a witness prior to trial in certain circumstances, but has no other specifically enumerated rights to discovery from a victim.

{¶ 20} The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" The Ohio Constitution further recognizes "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated" except upon a warrant issued upon probable cause. Ohio Constitution, Article I, Section 10. These constitutional protections have been generally interpreted as being co-extensive, but the Ohio Supreme Court has found the Ohio Constitution to have independent force that affords greater protection. *See, e.g., State v. Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175. Further, both the United States and Ohio Constitutions provide added protection of the right to privacy. *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Housh v. Peth*, 165 Ohio St. 35, 38-39, 133 N.E.2d 340 (1956).

{¶ 21} "It is a ""basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.""" *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), quoting *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), quoting *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "'[W]arrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" *Id.,* quoting *Mincey v. Arizona*, 437 U.S. 385, 393-394, 98 S.Ct.

2408, 57 L.Ed.2d 290 (1978). If the state of Ohio were to seek entry into the victims' homes against their will, it would have to demonstrate probable cause to obtain a warrant for such entry.

3. Criminal defendants' trial rights and right to discovery

{¶ 22} Counts argues the trial court properly issued the discovery order allowing her entry into the victims' home because the trial court simply enforced her right to due process, her right to counsel, and her right to a fair trial. *See, e.g.*, *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *Chambers v. Mississippi*, [410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973),] or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, *Washington v. Texas*, 388 U.S. 14, 23 (1967); *Davis v. Alaska*, 415 U.S. 308 (1974), the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' *California v. Trombetta*, 467 U.S., at 485; cf. *Strickland v. Washington*, 466 U.S. 668, 684-685 (1984).").

{¶ 23} The Ohio Supreme Court recently summarized a criminal defendant's rights in *State v. Montgomery*, Slip Opinion No. 2022-Ohio-2211. It found that the right to a fair trial is derived from the Sixth Amendment protections granted criminal defendants at trial. The Ohio Supreme Court listed the rights comprising the right to fair trial to include those trial rights contained within the Sixth Amendment and those found in the Due Process and Equal Protection clauses of the U.S. Constitution:

[A criminal defendant's] right to a fair trial stem from the Sixth Amendment to the United States Constitution, which states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

This right is applicable to the states through the Fourteenth Amendment. *See Ramos v. Louisiana*, _____ U.S. ___, ___, 140 S.Ct. 1390, 1397, 206 L.Ed.2d 583 (2020)

\* \* \*

The Fourteenth Amendment provides added protection for a fair trial in its equal-protection and due-process clauses. *See Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) ("The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment"); see also *State v. Lane*, 60 Ohio St.2d 112, 114, 397 N.E.2d 1338 (1979), quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) ("'A fair trial in a fair tribunal is a basic component of due process'"). What constitutes fairness is not discrete. "[C]ourts must be alert to factors that may undermine the fairness of the fact-finding process \* \* \* and carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle* at 503, citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "It is well established that the mere probability of deleterious effects on fundamental rights calls for close judicial scrutiny." *Lane* at 115.

*Id.* at ¶ 7-8.

{¶ 24} The rights directly asserted by Counts in this case include her right to due process, a right to fair trial, the right to counsel, as well as a right to present a complete defense. These rights, whether directly enumerated or found through more general provisions of the U.S. Constitution, have been asserted as forming a

basis to justify the discovery request in this case. Although a defendant is entitled to the constitutional trial rights of Due Process, counsel, and a fair trial as guaranteed under both the state and federal constitution, "'[t]here is no general constitutional right to discovery in a criminal case * * *.'" *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 31; *Weatherford v. Bursey* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Recently, in affirming the denial of a criminal defendant's request to inspect a crime scene not under the control of the government, the United States Tenth Circuit Court of Appeals found no constitutional right to pretrial discovery and further, there was no constitutional right to inspect property not in the control of the government. *United States v. Bullcoming*, 22 F.4th 883, 889-890 (10th Cir.2022). The court noted that

> [w]hile no federal appellate courts appear to have addressed this issue, the federal district courts that have considered it have declined to grant such authority. See, e.g., *United States v. Hawk*, No. CR 12-50044-JLV, 2013 U.S. Dist. LEXIS 27701, 2013 WL 773908, at *2 n.1 (D.S.D. Feb. 28, 2013) (unpublished) ("The defendant has not presented any case law, nor is this court aware of any case law within the Eighth Circuit, which supports an absolute constitutional right to enter a private residence not in control of the government in order to view the scene of the charged offense."); *United States v. Bryant*, No. 8:08CR377, 2009 U.S. Dist. LEXIS 69924, 2009 WL 3229756, at *1-2 (D. Neb. Oct. 5, 2009) (unpublished) (denying the defendant's motion for leave to inspect the premises of a nonparty).

*Id.*

{¶ 25} Although the United States Constitution provides no right to discovery, Ohio Constitution, Article I, Section 10 does provide that "provision may be made by law for the taking of the deposition by the accused or by the state, to be

used for or against the accused, of any witness whose attendance cannot be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court."

4. Discovery of confidential or privileged information

{¶ 26} In *McGinty II*, the Ohio Supreme Court found the victim's right to refuse a discovery request is not absolute, and explained the right to refuse as being analogous to a privilege. *Id*. at ¶ 45. In likening an alleged victim's rights under Marsy's Law to being a privilege, the Ohio Supreme Court in *McGinty II* made it clear that these rights are subject to exception. In *J&C Marketing, L.L.C. v. McGinty*, 143 Ohio St.3d 315, 2015-Ohio-1310, 37 N.E.3d 1183, the court stated, "privilege is not absolute: it is limited by 'the fundamental requirements of fairness,' so that when the privileged information 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.' *Roviaro v. United States*, 353 U.S. 53, 60-61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). A strong presumption militates against lifting the privilege. *In re New York City*[, 607 F.3d 923 (2d Cir.2010)] at 929." *Id*. at ¶ 18.

{¶ 27} In reviewing criminal discovery requests not impacted by Marsy's Law, e.g., privileged or confidential police personnel files, this court has required a defendant to demonstrate a reason or need for discovery of that information in order to overcome the privilege associated with those documents. *See, e.g., State v. Jones*, 8th Dist. Cuyahoga No. 98175, 2013-Ohio-815, ¶ 32, citing *State v. Harris*, 8th Dist.

Cuyahoga No. 44029, 1982 Ohio App. LEXIS 15403 (Mar. 11, 1982), *State v. Bonnell*, 8th Dist. Cuyahoga No. 55927, 1989 Ohio App. LEXIS 4982, 16-17 (Oct. 5, 1989) (Trial court did not abuse discretion in denying motion for discovery of officer's personnel files based on "a generalized statement that the files might contain helpful information."); *see also Columbus v. Robinson*, 33 Ohio App.3d 151, 514 N.E.2d 919 (10th Dist.1986).

D.  The trial court abused its discretion by ordering an inspection of the victim's home

>  1.  A balancing test of competing rights is necessary when seeking to order a victim to comply with discovery orders over her objection

{¶ 28} A victim's right to refuse discovery is not absolute; it is subject to exception as is the Fourth Amendment right to be secure in one's home.  In determining that a writ of prohibition would not lie to preclude the trial court's order in this case, this court stated that the trial court must engage in a balancing test of the defendant's right to a fair trial against the victims' rights:

>  A person's right to privacy; the right to be secure in persons, houses, papers, and effects against unreasonable searches and seizures; and the right, as stated in Section 10a, to refuse a discovery request must be weighed against a criminal defendant's rights to due process, to confront witness, to have compulsory process to obtain evidence, and to effective assistance of counsel, especially in preparation, all to the end that justice be effected.

*McGinty I* at ¶ 42.  In *McGinty II*, the Ohio Supreme Court noted that the trial court would need to determine whether or not a discovery request "overrides" a victim's right to object.  *Id.*  at ¶ 45.[3]

{¶ 29} Accordingly, where a trial court is moved to order a victim to produce discovery, other than a deposition, the trial court should conduct a balancing test to determine whether the victim's right to refuse a discovery request is outweighed by a criminal defendant's rights.

{¶ 30} However, because this is a case of first impression, prior precedent has not outlined the scope of the balancing test and the considerations to be undertaken.  In *McGinty I*, this court reviewed decisions from other state courts confronted with the issue of ordering a victim of crime to allow an inspection of their home by a defendant. *McGinty I* at ¶ 31-32.  In *State in Interest of A.B.*, the court adopted a balancing test to weigh the defendant's rights to those of a victim of crime. In considering the request, the court outlined the defendant's rights and found that the discovery order was appropriate where

> the defense has made a legitimate request to inspect a crime scene that is an alleged victim's home and has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim and her family, the discovery should be granted.  * * *  The

---

[3] Other state courts that have found a defendant may inspect a nonparty, or victim's, property in criminal discovery under state law have adopted a balancing test that weighs the rights of the victim against the rights of the accused.  *E.g., State in Interest of A.B.*, 219 N.J. 542, 99 A.3d 782 (2014), finding that a balancing of rights was to be conducted where a defendant requested an inspection of the victim's home.

burden rests with the defendant to show a reasonable basis to believe that a home inspection of limited duration will yield relevant evidence.

*Id.*[4]

{¶ 31} At a minimum, the New Jersey court found that the request to inspect a victim's home must be "legitimate" and articulate "a reasonable basis to believe the inspection will lead to relevant evidence on a material issue" in order to outweigh the rights of a victim. *Id.* In that case, the court found that there was a legitimate reason for the discovery request. The defendant was charged with sexual offenses against a minor child that allegedly occurred during a three-week period when the minor child was staying with the defendant's aunt. Defendant sought to inspect the victim's home in order to better document the layout of the home in order to show that the alleged offenses could not have occurred undetected by five other adults in the home at the time. *Id.* at 795.

{¶ 32} With this standard in mind, a balancing test between a victim's Ohio Constitutional right to refuse discovery under Marsy's Law, Ohio Constitution, Article I, Section 10a, and the victims' right to privacy and to be secure in their home pursuant to the Fourth Amendment and Ohio Constitution, Article I, Section 14, against a criminal defendant's request for the inspection, must at a minimum

---

[4] The court conducted a full analysis of the balancing of rights in that case; however, New Jersey law does not contain a state constitutional right on the part of a victim to refuse a discovery request.

consider if there exists a specific need for the inspections in order to preserve the defendant's rights.

### 2. The trial court failed to apply the correct analysis when conducting the balancing test of competing rights

{¶ 33} In this case, after the writ of prohibition was dismissed, the trial court conducted a hearing upon Counts's request to inspect the victims' home and employed a balancing test. Throughout the proceedings, Counts provided the reasons she sought an inspection of the home. She argued that the material in the possession of the state was inadequate to recreate the scene and that Counts's presence was necessary to assist counsel in the inspection. Counsel further argued that the request was grounded in a good-faith belief that the inspection would be material to Counts's defense. These arguments were premised upon an assertion of her constitutional rights to due process, to counsel, to present a complete defense, and to a fair trial. However, beyond statements as to how the inspection could be helpful, counsel did not articulate *why* in this case and upon these facts it was *necessary* to conduct an inspection of the premise.[5] Throughout the proceedings,

---

[5] The dissenting opinion provides a list of the trial court's considerations, to include that "(3) no one can intrude with the relationship between a defense attorney and their client, which is a private, privileged conversation." Counts did not argue that she did not present information to the trial court because of the attorney-client privilege. The trial court referenced the attorney-client privilege to explain to the victims why they could not be present at the inspection. Even if such privilege were at issue, the trial court could have held an in-camera hearing to receive any privileged information.

The dissenting opinion also compiles a list of Counts's reasons for wanting the inspection. These reasons do not demonstrate why an inspection is necessary and will lead to relevant

counsel did not articulate a specific reason or need as to why the failure to inspect the victims' home would result in a violation of Counts's trial rights.

{¶ 34} At the hearing, the victims were willing to withdraw their objection to the inspection, so long as Counts was not permitted in the home. Despite this willingness to compromise, the victims did not waive their ability to refuse the discovery request.

{¶ 35} In conducting the balancing test, the trial court determined that Counts's rights in total outweighed the victims' rights to refuse discovery. In explaining its decision, the trial court outlined what it considered in its balancing test, stating:

> A comparison review of Marsy's Law and the Defendant's rights under the 4th, 5th, 6th and 14th amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution compels one to rule in favor of the Defendant's rights to a fair trial and effective assistance of counsel.

{¶ 36} The trial court did not reference the victims' Fourth Amendment rights in conducting the balancing test. However, the trial court indicated that it considered the extent of harm that could befall the parties by comparing the potential prison sentence Counts faced to the extent of the invasion of the victims'

---

evidence that may prove or disprove either a defense at trial or a theory propounded by the state in the case. In all, the list lacks a substantive connection to the case.

privacy and their home when it found that the intrusion or harm caused by the entry into the home for inspection was "for a short period of time."

{¶ 37} The Fourth Amendment is not inviolate, but an intrusion into a home by order of the government to be lawful requires specific justification. For a search warrant to issue, the intrusion must be based upon a finding of probable cause. Additionally, in considering ordering the production of privileged or confidential documents in discovery, the party seeking that material must articulate a demonstrated need for the material. Thus, any balancing of rights to be undertaken between Counts's trial rights and the victims' right to privacy; the right to be secure in persons, houses, papers, and effects against unreasonable searches and seizures; and the right to refuse a discovery request must recognize that the requested discovery is necessary to preserve a defendant's trial rights. A showing that the discovery requested is necessary is akin to the heightened requirements a court must find to order disclosure of privileged information, as well as the heightened requirements that a court must find to allow the state to enter a home.

{¶ 38} The trial court did not apply the proper standards in its balancing test when assessing the victims' rights against Counts. As discussed *supra*, the trial court did not find that Counts demonstrated a specific need for the discovery requested. The trial court compared the effects of denying Counts's request for discovery against the intrusion into the victims' home, noting the potential prison sentence Counts faced and contrasted this potential penalty against the effect the victims would suffer as being a de minimis intrusion into their home and a "brief invasion

of privacy." By so doing, the trial court applied an incorrect standard when conducting the balancing test. The trial court did not require a showing that the discovery was necessary and did not balance the competing constitutional rights between Counts and the victims, but instead balanced the potential effects the grant or denial of the order would have on them.[6] Further, we note that the trial court stated that a denial of Counts's "right to obtain evidence in order to assist in her defense at trial" would deny her constitutional rights implicating her right to counsel. To the extent that the trial court elevated any procedural right of discovery to be a constitutional trial right, we similarly find the trial court applied an incorrect standard where no constitutional right to discovery has been found.[7]

{¶ 39} We recognize that a criminal defendant is entitled to due process of law, effective assistance of counsel, and a fair trial. In this case, Counts argues that her right to inspect the crime scene is protected under the panoply of trial rights found to be constitutional rights. The trial court agreed and found Counts's right to inspect the crime scene was inherent within the right to counsel by holding that to "deny [Counts] the right to obtain evidence in order to assist in her defense at trial

---

[6] Such a balancing of the effects of a discovery order could easily lead to disparate results for criminal defendants as a defendant facing less severe penalties would not be afforded the same consideration as a defendant facing more severe sanctions if convicted.

[7] To the extent the trial court considered the victims' willingness to compromise and allow counsel the opportunity to inspect the home, such consideration would be improper in conducting a balancing test of rights. The victims' offer to compromise does not diminish the importance of their rights.

would facially and substantially deny her constitutional rights." However, neither the United States or Ohio Constitutions have been interpreted to define discovery from nonparties as a constitutional right. *See Bullcoming*, 22 F.4th at 889-890 (10th Cir.2022). It is evident that the citizens of Ohio sought to elevate victim's rights by placing Marsy's Law into the Ohio Constitution. This right to refuse a discovery request is in addition to all citizens' rights to privacy and security of their homes. Any balancing of rights needs to recognize the importance of the range of victims' rights, which may only be disregarded when a legitimate request to inspect a victim's home, based upon an articulated reason that the inspection will lead to relevant evidence on a material issue is presented to the trial court. *See State in Interest of A.B.*, 219 N.J. 542, 99 A.3d 782.

{¶ 40} In this case, the defendant did not articulate a specific need necessitating entry into the victims' home to vindicate her right to due process, right to counsel, or right to fair trial, nor did the trial court find that such need existed. Although the trial court determined that the invasion of privacy it ordered was de minimis in relation to the potential prison sentence defendant faced if convicted, the length of time of an intrusion into a home should not be the principal consideration in a balancing test. Rather, the framework to be applied needs to balance the inviolate rights one has in the privacy and security of one's home against the criminal defendant's necessity for such entry. Without requiring a defendant to show a specific need for discovery to be compelled from a victim, a criminal defendant would be able to gain entry into a victim's home for any purpose, so long

as they state that they have a good-faith belief such intrusion would merely be helpful. Constitutional rights afforded a victim cannot give way to a request that may only provide helpful information; such rights should only be overridden based upon a demonstrated necessity.

{¶ 41} For these reasons, we find the trial court abused its discretion. The victims' assignment of error is well taken and the judgment of the trial court is reversed.

III. CONCLUSION

{¶ 42} In this case of first impression, the trial court applied a balancing test to determine whether it would allow a criminal defendant to inspect a victims' home over her objection. In applying that balancing test of the criminal defendant's constitutional and trial rights versus the victims' constitutional rights, the trial court did not apply the correct standards of law nor did it require the defendant to state a specific need for the discovery. By employing incorrect standards of law in assessing the weight of the respective rights of the defendant and the victims, the trial court abused its discretion.

{¶ 43} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellants recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

CORNELIUS J. O'SULLIVAN, JR., J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINON ATTACHED);
MARY J. BOYLE, J., DISSENTS (WITH SEPARATE DISSENTING OPINION ATTACHED)

CORNELIUS J. O'SULLIVAN, JR., J., CONCURRING IN JUDGMENT ONLY:

{¶ 44} Since the Northwest Ordinance of 1787, judges in the Ohio territory have been asked to weigh and balance the interests of justice, the rights of the accused, the rights of the victims, and the sensibilities of the community at large.

{¶ 45} Perhaps unsatisfied with the way that some courts were balancing these often-competing interests, an initiative by Ohio voters named "Marsy's Law" was devised and placed on the ballot for the November 7, 2017 election. It was adopted, and Marsy's Law became effective on February 5, 2018, amending Article I, Section 10a of the Ohio Constitution. Marsy's Law does not ask the courts to balance the interests of the accused with those of the victim. Marsy's Law is that balance.

{¶ 46} Marsy's Law provides, in relevant part:

(A) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused:

(1) to be treated with fairness and respect for the victim's safety, dignity and privacy;

* * *

(6) except as authorized by section 10 of Article 1 of the constitution, to refuse an interview, deposition, or other discovery request made by the accused or any person acting on behalf of the accused;

* * *

(E) All provisions of this section shall be self-executing and severable, and shall supersede all conflicting state laws.

(Emphasis added.)

{¶ 47} Marsy's Law, now embedded into Ohio's Constitution, places no limits on a victim's right to refuse an interview, deposition, or other discovery request made by the accused or their counsel. Marsy's Law expands the rights afforded to victims of crimes and expressly provides that a victim shall be treated with fairness and respect for the victim's privacy and that a victim can refuse a discovery request. By inserting the words "or other discovery request" into the Constitution, clearly a victim can refuse *any* discovery request, except as authorized by section 10 of Article I of the Ohio Constitution. Article I, Section 10 of the Ohio Constitution does not grant a defendant the constitutional right to access a victim's home.

{¶ 48} The Ohio Supreme Court has never recognized that a trial court's discretion in regulating discovery between the parties under Crim.R. 16 extends to permit a trial court to force a nonparty to open his or her private residence to a criminal defendant. Nor has the Ohio Supreme Court held that a defendant has a

constitutional right to access a nonparty's home for purposes of preparing a defense.

{¶ 49} The plain language of Marsy's Law allows a victim to refuse all discovery requests. The state has the burden of proof in criminal cases. There is no constitutional right to discovery in particular, nor a constitutional right for a court to order a person to open their home to the state, to the defendant or to anyone designated by the state, for any reason or for any amount of time. Marsy's Law is not in conflict with any provision of the Ohio or U.S. Constitution and trumps a defendant's nonspecific rights. There is no room for a trial court's discretion or balancing tests. In other words, it is not necessary for this court to discuss a trial court's broad discretion under Crim.R. 16 or engage in a balancing test. Marsy's Law leaves the decision solely in the hands of the victim, not the court.

{¶ 50} Finally, I would suggest that the standard of review in this case is de novo. As the lead opinion outlines, the Ohio Supreme Court has likened the constitutional right to refuse discovery to a qualified privilege. In light of the constitutional authority granted the victim, and because, as noted, once the accused is permitted access to the domicile, the damage is done and the "proverbial bell" cannot be unrung, I would review the matter de novo. The victim has a constitutional privilege to refuse this discovery. Under that standard this case must be reversed.

{¶ 51} Even if we review for an abuse of discretion, the standard has been met. An abuse of discretion is when a legal rule entrusts a decision to a judge's

discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices. *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19. By failing to follow the clear and unambiguous dictates of Marsy's Law, the trial judge's decision was outside of the legally permissible choices.

{¶ 52} For the foregoing reasons, I concur in judgment only.

MARY J. BOYLE, J., DISSENTING:

{¶ 53} Because the lead opinion first conflates our abuse of discretion standard of review on appeal with a new "legal standard" that the trial court should have followed without explaining what that standard entails, and then conflates its application of the abuse-of-discretion standard by substituting its own judgment for that of the trial court, I must respectfully dissent. I would affirm the trial court's decision allowing Counts to inspect the alleged victims' residence. To conclude otherwise would undermine the fairness of the fact-finding process accorded to a criminal defendant.

{¶ 54} The lead decision finds that the trial court applied an incorrect legal standard in its balancing test when it assessed the weight of the alleged victims' rights against Counts' rights. The lead decision states that the trial court did not reference the alleged victims' Fourth Amendment rights in conducting the balancing test, yet the lead acknowledges that the trial court considered Marsy's Law and considered the intrusion into the alleged victims' home, which goes to the heart of the Fourth Amendment's right to privacy in the home. The lead decision finds that

the framework to be applied by the trial court "needs to balance the inviolate rights one has in the privacy and security of one's home against the criminal defendant's necessity for such entry." This is exactly what the trial court did in the instant case. But because the lead decision does not agree with the trial court's exercise of discretion, it creates a "legal standard" with which the trial court must comply with without explaining what that standard entails. This proverbial "dog chasing its tail" analysis provides the trial court with no guidance.

{¶ 55} The applicable legal standard of review in the instant case for the discovery order is an abuse of discretion, which the lead decision acknowledges. "Abuse of discretion" is "'commonly employed to justify an interference by a higher court with the exercise of discretionary power by a lower court, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" *Johnson*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463 at ¶ 35, quoting *Black's Law Dictionary* 11 (2d Ed.1910).[8]

---

[8] The concurring-in-judgment-only decision suggests that the standard of review in this case is de novo. In *McGinty II*, however, the Ohio Supreme Court stated that the trial court issued a discovery order, which is reviewed for an abuse of discretion. The court stated, "Though appellants contend that the order exceeds the authority granted by Crim.R. 16, the common law, and the state and federal Constitutions, appellants' objections implicate an alleged error in Judge McGinty's exercise of jurisdiction, not in his jurisdictional power to issue discovery orders in criminal cases." *McGinty II* at 164 Ohio St.3d 167, 2020-Ohio-5452, 172 N.E.3d 824, at ¶ 19. The court went on to state that "[b]ecause of the discretionary authority vested in the common pleas courts, '"an extraordinary writ will not issue to control [the trial court's] judicial discretion, even if that discretion is abused."'" *Id*. at ¶ 20, quoting *State ex rel. Mason v. Burnside*, 117 Ohio St.3d 1, 2007-Ohio-6754, 881 N.E.2d 224, ¶ 1, quoting *Berthelot v. Dezso*, 86 Ohio St.3d 257, 259, 714 N.E.2d 888 (1999).

{¶ 56} In *Johnson*, the Ohio Supreme Court recently recognized that its long-standing definition of abuse of discretion, which the lead decision cites, "has been noted by at least one Ohio appellate court * * * [as] an 'offensive formulation.'" *Id.* at ¶ 34, quoting *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 17 (2d Dist.). The *Johnson* Court stated that the notion that an abuse of discretion is more than an error of law can be traced back to *Steiner v. Custer*, 137 Ohio St. 448, 31 N.E.2d 855 (1940). In *Steiner*, the Ohio Supreme Court relied on the second edition of Black's Law Dictionary as support for its statement that "'[t]he meaning of the term "abuse of discretion" in relation to [the granting of a motion for a new trial] connotes something more than an error of law or judgment.'" *Id.* at ¶ 34, quoting *Steiner* at 451. The *Johnson* Court noted, however, that the *Steiner* Court did not quote the Black's Law Dictionary definition in its decision. *Id.*

{¶ 57} The Black's Law Dictionary definition used by the *Johnson* Court and quoted above "squares with the common understanding of what constitutes an abuse of discretion: a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Id.* at ¶ 35. "Absent from this definition is any indication that the abuse-of-discretion standard applies when a court is making a determination of law." *Id.* The court used *Johnson* as an opportunity to clarify "that courts lack the discretion to make errors of law,

particularly when the trial court's decision goes against the plain language of a statute or rule." *Id.* at ¶ 39.[9]

{¶ 58} Moreover, it is well-settled that when applying an abuse-of-discretion standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 566 N.E.2d 1181 (1991); *Berk v. Matthews*, 53 Ohio St.3d 161, 559 N.E.2d 1301 (1990); *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 7, citing *Marx v. Marx*, Cuyahoga App. No. 83681, 2004-Ohio-3740; *Schumann v. Schumann*, 8th Dist. Cuyahoga Nos. 83404, 83631, 2005-Ohio-91, ¶ 42; *Di v. Cleveland Clinic Found.*, 2016-Ohio-686, 60 N.E.3d 582, ¶ 72 (8th Dist.). Rather, a "reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge '* * * is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *'" *In re Jane Doe 1* at 138, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E. 2d 1273, 1276 (1984). Indeed, *"[t]he exercise of an honest judgment*, however erroneous it may appear to be, *is not an abuse of discretion.*'" (Emphasis sic.) *Johnson* at ¶ 35, quoting *Black's Law Dictionary* 11 (2d Ed.1910).

---

[9] In *Johnson*, the court held that the trial court committed an error of law when it found that a physician employed in an executive position, who does not directly oversee physicians who treat patients, could testify as a defense expert because the physician's employment does not satisfy the plain language of the active-clinical-practice requirement of Evid.R. 601. *Id.* at ¶ 39 and 42.

**{¶ 59}** The lead opinion cites to *State in Interest of A.B.* at 219 N.J. 542, 99 A.3d 782 (2014), as guidance for the balancing test to be applied when seeking to order a victim to comply with a discovery order.[10] In *A.B.*, a 17-year-old juvenile was accused of sexually molesting his six-year-old cousin at his cousin's home. The defense sought its own inspection of the alleged victim's home despite having access to all the photographs and material the prosecutor possessed. Defense counsel argued that the inspection was necessary to prepare for trial. The trial court allowed the search, limiting the search to 30 minutes, allowing an investigator from the prosecutor's office to be present, prohibiting the parents from participating but allowing them to be in another part of the house and to determine the time of the inspection. *Id.* at 550. The state of New Jersey appealed and the Appellate Division affirmed the family court's inspection order. The Appellate Court found that the family court

> "carefully considered the pertinent facts and balanced the competing interest of defendant's due process rights to prepare and present a defense against the right of the victim and her family to the privacy

---

[10] I am aware of a recent decision by the United States District Court for the Northern District of Ohio, Eastern Division regarding the Fourth Amendment in the context of a method used by Cleveland State University with remote testing that involves the use of a student's camera to briefly scan their surroundings for potential impermissible study aids or notes. *Ogletree v. Cleveland State Univ.*, N.D.Ohio No. 1:21-cv-00500, 2022 U.S. Dist. LEXIS 150513, at 1 (Aug. 22, 2022). The plaintiff, a student at Cleveland State, filed suit alleging that this practice or policy violated his rights when a proctor asked him to conduct a room scan of his bedroom before taking a remote test. *Id.* The District Court employed a balancing test in determining the reasonableness of the search and found that the student's privacy interest in his home outweighed Cleveland State's interests in scanning his room. As a result, the court found that Cleveland State's practice of conducting room scans were unreasonable under the Fourth Amendment. *Id.* at 29.

and security of their own home." The panel noted that the case "turn[s] on the credibility of the witnesses" and whether the juvenile could have committed the alleged sexual abuse of his cousin "without detection." The panel determined that the family court "fully comprehended the invasion of the victim's family's privacy and security entailed by allowing defendant and his defense team access to their home." The panel did not second-guess the court's judgment that the home inspection "was relevant to [A.B.'s] claims of innocence and could produce exculpatory evidence" and that the defense should not be limited to "the photographs taken by the State." Finally, the panel concluded that the family court "soundly exercised its discretion" by crafting an order that limited the "intrusion on the victim's family" to no more than what was "absolutely necessary to accommodate defendant's due process rights."

*Id.* at 551-552.

{¶ 60} The issue before the New Jersey Supreme Court was "whether the family court abused its discretion by entering a discovery order allowing the accused, his attorney, and his investigator to inspect and photograph specified areas of the alleged victim's home for no more than thirty minutes in the presence of a prosecutor's investigator." The *A.B.* Court noted that this "issue presents a balancing of the right of the accused to a fair trial and the right of an alleged victim and her family to privacy in their home." *Id.* at 554.

{¶ 61} Like Ohio, New Jersey has a constitutional provision, the Victim's Rights Amendment, which guarantees that a crime victim "'shall be treated with fairness, compassion and respect.'" *Id.* at 598, quoting N.J. Const. Art. I, ¶ 22. New Jersey's criminal discovery rules provides automatic access to a wide range of evidence, including building or places within the possession or control of the prosecutor, and its criminal discovery law recognizes that trial courts have "'the

inherent power to order discovery when justice so requires[,]'" even beyond the stated provisions of the rules. *Id.* at 555, quoting *State ex rel W.C.*, 85 N.J. 218, 221, 426 A.2d 50 (1981), and citing N.J. Court Rules, R. 3:13-3(b).

{¶ 62} In affirming the trial court's decision, the New Jersey Supreme Court noted that it required the balancing of the right to a fair trial and the right of the alleged victims to privacy in their home. The *A.B.* Court was mindful that the purpose of pretrial discovery is to ensure a fair trial. The court stated, "[a] criminal trial where the defendant does not have 'access to the raw materials integral to the building of an effective defense' is fundamentally unfair." *Id.* at 556, quoting *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed. 2d 53 (1985). The court also noted that visiting a crime scene can be critical in preparing a defense. *Id.* A trial attorney must know what the crime scene looks like to be able to interview witnesses and prepare direct and cross-examination. *Id.* Indeed, the failure to investigate a crime scene could constitute ineffective assistance of counsel. *Id.*, citing *Thomas v. Kuhlman*, 255 F.Supp.2d 99, 109, 112 (E.D.N.Y. 2003).

{¶ 63} Because the criminal defendant's request for access to inspect the alleged victim's residence was not within the general scope of the automatic discovery rule since the alleged victim's residence is not "within the possession, custody or control of the prosecutor," the *A.B.* Court reasoned that the criminal defendant must demonstrate that the inspection is justified. *Id.*, citing *W.C.* Therefore, the court considered the "burden that a defendant bears when seeking access to a home of an alleged victim that is a crime scene." *Id.*

{¶ 64} In doing so, the court noted that New Jersey's Victim's Rights Amendment requires that "[a] victim of a crime shall be treated with fairness, compassion and respect." *Id*. at 558, quoting N.J. Const. Art. I, ¶ 22. But the court also noted that the rights of the accused and alleged victims and witnesses rights are not mutually exclusive. Indeed, "[o]ne right does not have to be sacrificed for another. They can and must be harmonized." *Id*. This harmony can be achieved by weighing "the accused's need for a particular species of discovery against the impact the discovery request may have on the privacy and lives of witnesses and alleged victims." *Id*. at 560.

{¶ 65} In examining the criminal defendant's rights, the *A.B.* Court acknowledged that "a defense attorney's visit to the scene of the crime is a rather ordinary undertaking, and in some circumstances, such an inspection might constitute a professional obligation." *Id*. at 561, citing *Thomas*. The court noted that the "State generally will have thoroughly investigated a crime scene, securing evidence and taking photographs" and "[f]amiliarity with a crime scene may be essential for an effective direct or cross-examination of a witness — and even for presenting exculpatory evidence." *Id*. The court further acknowledged that "[i]n many instances, the defense will not be on an equal footing with the prosecution if it is barred from a crime scene to which the prosecutor has access." *Id*.

{¶ 66} In examining the alleged victim's rights, the court acknowledged that "when a crime scene is the home of a victim, other significant concerns arise. The right to privacy in one's home is a basic right, and all alleged victims of crime have

an interest in not revisiting a traumatic event." *Id.* The court further acknowledged that "the undeniable reality is that a criminal prosecution will intrude into an alleged victim's privacy" and "[p]articipation in the criminal justice process will undoubtedly be a source of inconvenience and anxiety, and will result in some incursion into privacy rights of witnesses." *Id.* The court noted that "some of these adverse consequences are the inevitable price that must be paid to ensure the accused receives a fair trial." *Id.* at 561-62.

{¶ 67} In light of the foregoing, the *A.B.* Court held that

> when the defense has made a legitimate request to inspect a crime scene that is an alleged victim's home and has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim and her family, the discovery should be granted. * * * The burden rests with the defendant to show a reasonable basis to believe that a home inspection of limited duration will yield relevant evidence.

*Id.* at 562, 99 A.3d 782.

{¶ 68} Similarly, in the instant case, the defense made a legitimate request to inspect the location of the crime, which is the alleged victims' residence, and articulated a reasonable basis to believe the inspection would lead to relevant evidence on a material issue. The trial court granted the discovery request, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim.

{¶ 69} The record demonstrates that the trial court employed a balancing test by clearly taking the parties' competing interests into consideration,

appropriately balancing these interests, and, in its honest belief, determining that Counts's constitutional right to a fair trial outweighed the alleged victims' right to privacy in their home. The court thoughtfully noted that: (1) the defense needs access to the home for measurements and photographs; (2) the defense has the right to put their case together; (3) no one can intrude with the relationship between a defense attorney and their client, which is a private, privileged conversation; (4) Counts is entitled to the ability for an unvarnished look with her counsel; (5) with Counts present, counsel could get an understanding of what their client told them; and (6) to deny Counts the right to obtain evidence in order to assist in her defense at trial would facially and substantially deny her constitutional rights. With regard to the victims' rights, the trial court assured the victims that it would have a person present there and their representative would be with the defense as they conduct the investigation, so that the defense will not go into any drawers or closets.

{¶ 70} The court found that the possible loss of Counts's liberty (potential of over 40 years in prison for attempted murder and four counts of felonious assault) preempts the brief invasion of the alleged victims' privacy. The court noted that inherent in Counts's right to counsel is the right to have her case properly investigated, and when necessary, to have property inspected without the State or its agents peering over the shoulders of counsel. It is also important to note that the trial in this case is likely to be a credibility contest between F.K. and L.T. and Counts because Counts claims she acted in self-defense. The court then carefully crafted an order protecting the parties' respective rights using the least intrusive means. The

court limited Counts to one and a half hours on the premises, with permission to only enter the front entryway, the staircase, the area under the staircase, the upstairs hallway, and the upstairs bathroom. The court further ordered that the defense will be accompanied by a member of the court staff and a Cuyahoga County sheriff's deputy, who would be present at all times while Counts, her counsel, and their experts are within the residence, and should be within the view of the court staff and sheriff's deputy. Lastly, the court ordered that the alleged victims, county prosecutor's office personnel, and the Cleveland police department may be present, but may not be within the residence during the discovery process. The court noted that

> To deny the Defendant the right to obtain evidence in order to assist in her defense at trial would facially and substantially deny her constitutional rights. One accused of a crime my face jail, prison, or even death. The victim in this case is being ordered to allow the Defendant the right to inspect the victim's premises with counsel, under supervision, for a short period of time. The possible loss of the Defendant's liberty preempts the brief invasion of the victim's privacy. Inherent in the Defendant's right to counsel, is the right to have the accused's case properly investigated, and when necessary, to have property inspected without the State or its agents peering over the shoulders of counsel.

(Trial Court's Judgment Entry, Nov. 19, 2021.)

{¶ 71} It is clear from the foregoing order that trial court properly exercised its discretion when ruling on Counts's "Motion for Criminal Rule 16 Entry Upon Land for Inspection and Photograph" by employing a balancing test and determining that Counts's constitutional right to a fair trial outweighed the alleged victims' right to privacy in their home.

{¶ 72} The lead decision further finds that Counts did not articulate a specific need necessitating entry into the alleged victims' home. It is worth noting that the lead did not cite to any authority supporting the necessity of a specific need. Rather, in *A.B.*, the New Jersey Court found that the "burden rests with the defendant to show a *reasonable basis* to believe that a home inspection of limited duration will yield relevant evidence." (Emphasis added.) *Id.* at 562, 99 A.3d 782. I disagree with the lead decision and would find that the record demonstrates that Counts articulated a reasonable basis that a home inspection of limited duration will yield relevant evidence. I would also find that if a specific need were required, Counts demonstrated several needs necessitating entry into the alleged victims' home.

{¶ 73} Here, defense counsel argued to the trial court that: (1) the photos and videos provided by the state are not sufficient; (2) the videos provided depict the events and activity that occurred within the residence towards the end of the incident when the police arrived; (3) the intention is to map out the home and forensically recreate the incident with the good faith belief that this is material to Counts's defense; (4) the blueprint that was provided does not help with anything in the case because it is a sketch of the property; (5) it would be ineffective assistance of counsel if defense counsel did not request an inspection; (6) the defense does not object to the presence of a police officer or the bailiff; (7) without the ability to examine the crime scene, Counts's due process rights will be significantly impacted; (8) without Counts there to explain what took place, defense counsel's presence

would not be of any significance or value; (9) with a representative of the alleged victims present while Counts is there, defense counsel would not be free to have any discussions; (10) the defense has no intentions of entering anywhere other than the area of the incident and has no interest in going into any closets or any drawers; (11) it is impossible to mount a defense without the ability to see the crime scene; (12) a video inspection is not the same as physically being there; and (13) the defense cannot permit itself to be in a position where it compromises the possibility of missing something if the inspection is carried out by means of Zoom or FaceTime.

{¶ 74} In contrast, the alleged victims argued that the inspection would be "inconvenient" and stated they are not "comfortable" with Counts coming back into the house and "[i]t's very upsetting." The state acknowledged that it would not oppose a jury view.

{¶ 75} I am mindful that the balancing test will not always result in a criminal defendant's favor, despite their constitutional rights. This case, however, is not one of those instances. We are constrained to the record before us and an abuse-of-discretion standard of review. Here, the trial court properly exercised its discretion when it found that Counts demonstrated a reasonable basis and several needs for limited access to the victims' home. Therefore, I defer to the trial court's judgment and would not substitute my judgment for that of the trial court's. I decline to find that the carefully crafted inspection of the alleged victims' residence evidences the "'perversity of will, passion, prejudice, partiality, or moral

delinquency.'" *Johnson*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463 at ¶ 35, quoting *Black's Law Dictionary* 11 (2d Ed.1910).

{¶ 76} As a result, I would find that the trial court did not abuse its discretion and I would overrule the sole assignment of error.

{¶ 77} Accordingly, I would affirm the trial court's judgment.